**In re Kenneth Leroy WINKLE**
**and**
**Constance Cora Winkle, Debtors.**

**Paul D. GILBERT, Trustee in Bankruptcy, Plaintiff,**

**v.**

**PALMER MANUFACTURING AND SUPPLY, INC., Defendant.**

**Bankruptcy No. 3–89–04556.**
**Adv. No. 3–90–0056.**

United States Bankruptcy Court, S.D. Ohio, W.D.

May 28, 1991.

Paul D. Gilbert, Dayton, Ohio, for plaintiff.

Alan A. Biegel, Dayton, Ohio, for defendant.

U.S. Trustee, Columbus, Ohio.

## DECISION ON ORDER GRANTING JUDGMENT IN PART TO PLAINTIFF AND GRANTING JUDGMENT IN PART TO DEFENDANT

WILLIAM A. CLARK, Bankruptcy Judge.

This matter is before the court following a trial upon the plaintiff's complaint, which

alleges that certain transfers to the defendant are voidable under the Bankruptcy Code as either preferential or fraudulent transfers. The court has jurisdiction pursuant to 28 U.S.C. § 1334 and the standing order of reference entered in this district. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(F)—proceedings to determine, avoid, or recover preferences—and (b)(2)(H)—proceedings to determine, avoid, or recover fraudulent conveyances.

## FACTS

On March 14, 1989 Palmer Manufacturing and Supply, Inc. ("Palmer"), defendant herein, filed a complaint against Constance Winkle and Kenneth Winkle ("Debtors") in the Common Pleas Court of Clark County, Ohio, alleging that Constance Winkle, while an employee of Palmer, diverted moneys from Palmer for her own use. The complaint further stated that Constance Winkle used Palmer's funds to purchase real estate as well as personal property and that some of the property was placed in the name of her husband—Kenneth Winkle. Palmer contended that a constructive trust was created with respect to various transactions, and that Palmer should "be declared the legal owner of all of said real and personal property, rents, issues, profits, and dividends, and all other funds and property derived from [Palmer's] property" and held in the names of Constance Winkle and Kenneth Winkle (Palmer's state court complaint at p. 4).

On April 19, 1989, the state court judge entered a "Decision and Judgment Entry" and found by clear and convincing evidence that:

—Constance Winkle was an employee of Palmer, and that during her employment she wrote checks without authority on Palmer's checking account to Echo Insurance Company in an amount exceeding $100,000;

—both Constance Winkle and Kenneth Winkle were authorized to sign checks on the Echo Insurance Company account;

—during the relevant time period checks were deposited to the Echo Insurance Company account, and checks were written on

that account for various mortgages of the Winkles for the benefit of both debtors;

—although Constance Winkle committed embezzlement by writing the checks on Palmer's account and the checks on the Echo Insurance Company account, the embezzled money benefitted both Constance and Kenneth Winkle by "reducing their equity [sic] in the real estate they owned and the motor vehicles they currently own, with the exception of the 1934 Ford in Kenneth Winkle's name" (state court "Decision and Judgment Entry");

The court further found:

that by the embezzlement of the funds a constructive trust has been created in the real and personal property of defendants and that [Palmer] will be irreparably harmed if the [Winkles] are permitted to dispose of the assets into which [Palmer's] funds can be traced. *Id.*

Additional facts in this proceeding are set forth, as follows, in the "Stipulations of Fact" (Doc. # 22) submitted by the parties:

1. Constance Winkle ("Constance") was employed by Palmer Manufacturing and Supply, Inc. ("Palmer") as a bookkeeper from approximately August 1985 to March 1989.

2. Constance was convicted of embezzlement of funds from Palmer and is currently in prison for this offense.

3. Attached hereto is a copy of the pleadings in Case No. 89–CIV–392, Common Pleas Court of Clark County, Ohio, and a copy of the docket therefore.

4. On September 13, 1989, three automobiles previously owned solely by Kenneth Winkle ("Kenneth") (1986 Lincoln, 1988 Chrysler and 1932 Ford) were transferred to the name of Palmer.

5. On September 12, 1989, the property located at 3402 Echo Drive, Springfield, Ohio, owned by both Constance and Kenneth was transferred to Palmer.

6. On September 19, 1989, Palmer satisfied the mortgage against the Echo Drive property by the payment of Sixty Thousand Five Hundred Fifty-one and no/100 ($60,551.00) Dollars....

7. On September 21, 1989, Palmer sold the 1988 Chrysler to John C. Stratton and received the net sum of Ninety–Five Hundred and No/100 ($9,500.00) Dollars which was the fair market value when received from Kenneth.

8. On September 22, 1989, Palmer sold the 1986 Lincoln to Charles I Stratton and received the net sum of Ninety–Five Hundred and No/100 ($9,500.00) Dollars which was the fair market value when received from Kenneth.

9. On November 20, 1989, Palmer sold the 1934 Ford to Taylor's Auto Mart and received the net sum of Fourteen Thousand Two Hundred and No/100 ($14,-200.00) Dollars which was the fair market value when received from Kenneth.

On December 11, 1989, Constance and Kenneth Winkle filed a petition in bankruptcy pursuant to chapter 7 of the Bankruptcy Code.

## CONCLUSIONS OF LAW

The issue before the court is whether, despite the previous imposition of a constructive trust by the state court in April of 1989, the "transfers" of the automobiles by Kenneth Winkle and the "transfer" of the real estate by Kenneth and Constance Winkle in September constituted either preferential transfers under § 547 of the Bankruptcy Code or fraudulent transfers under § 548.

Section 547 provides, in part, that:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

At the outset, the court must note that it is not clear whether *for purposes of § 547* the "transfer" of the real estate and automobiles took place in April of 1989 (outside of the 90–day preference period) or on September 12th and 13th, respectively, within the 90–day preference period. In general—

"transfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption. 11 U.S.C. § 101(54).

Section 547, however, states that:

For the purposes of this section [547]—

(A) a transfer of real property other than fixtures, but including the interest of a seller or purchaser under a contract for the sale of real property, is perfected when a bona fide purchaser of such property from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest that is superior to the interest of the transferee; and

(B) a transfer of a fixture or property other than real property is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee.

11 U.S.C. § 547(e)(1). It may well be that under Ohio law, with respect to the real estate at least, that the state court's declaration of a constructive trust would have prevented a bona fide purchaser from acquiring an interest superior to that of Palmer, thereby rendering April 19th the date of transfer of the real estate for purposes of § 547. Nevertheless, because the

ultimate legal result is the same whether the "transfers" took place in April or September, the court will assume that the transfers took place during the period most vulnerable to attack by the trustee in bankruptcy, which is September of 1989 within the 90–day preference period.

In the instant proceeding, even if the "transfers" took place within the 90–day preference period, the court finds that the requirements of § 547(b)(5) have not been met, i.e., defendant Palmer did not receive more than it would have received if the transfers had not been made and in lieu of such transfers Palmer had received a distribution under the distributive provisions of the Bankruptcy Code. Upon the filing of a petition in bankruptcy, an estate is created, consisting of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Although the scope of § 541(a)(1) is extremely broad, it is not without limit. In particular, § 541(d) provides that:

> Property in which the debtor holds, as of the commencement of the case; only legal title and not an equitable interest, ... becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold. 11 U.S.C. § 541(d).

Section 541(d) "reiterates the general principle that where the debtor holds bare legal title without any equitable interest, the estate acquires bare legal title without any equitable interest in the property." 124 Cong.Rec. S17,413 (Oct. 6, 1978) (statement of Sen. DeConcini). In other words, "[t]o the extent such an interest is limited in the hands of the debtor, it is equally limited in the hands of the estate...." *Id.*

Therefore, "[i]f a debtor holds property impressed with a valid trust, the debtor's estate generally holds such property subject to the beneficiary's interest." *Sierra Steel, Inc. v. S & S Steel Fabrication (In re Sierra Steel, Inc.)*, 96 B.R. 271, 273 (9th Cir.BAP 1989). "Congress plainly excluded property of others held by the debtor in trust at the time of the filing of the petition." *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n. 10, 103 S.Ct. 2309, 2314 n. 10, 76 L.Ed.2d 515 (1983).

Generally, the nature and extent of a debtor's interest in property is determined by state law. In Ohio, a constructive trust is usually invoked when property has been acquired by fraud and has been described by the Supreme Court of Ohio in *Ferguson v. Owens*, 9 Ohio St.3d 223, 459 N.E.2d 1293, 1295 (1984) as:

> A trust by operation of law which arises contrary to intention and in invitum, against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy. It is raised by equity to satisfy the demands of justice. (quoting 76 Am.Jur.2d *Trusts* § 221 (1975)).

> . . . .

> A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee. (quoting Justice Cardoza in *Beatty v. Guggenheim Exploration*, 225 N.Y. 380, 386, 122 N.E. 378, 389 (1919)".

The trustee in bankruptcy submits that the state court order "did not affect the title to the vehicles" because Ohio Rev.Code § 4505.04 "specifically indicates that under Ohio law, title to a motor vehicle may only be established by a proper Certificate of Title" (Doc. # 26 at p. 2).[1]

---

1. § 4505.04 **Evidence of Ownership**

(A) No person acquiring a motor vehicle from its owner, whether the owner is a manu-

This court is aware that under Ohio law it is difficult to establish equitable ownership of an automobile, but that different results are reached in cases involving theft and fraud. No discussion of those cases is needed, however, because it is not the prerogative of this court to determine whether the Common Pleas Court of Clark County correctly or incorrectly applied its own state law; that is a function of the state court of appeals and not this court. On April 19, 1989, the state court judge found that Constance Winkle embezzled money from Palmer, that the embezzled funds benefitted both Mr. and Mrs. Winkle "by reducing their equity [sic] in the real estate they owned and the motor vehicles they currently own, with the exception of the 1934 Ford in Kenneth Winkle's name," and found that a constructive trust has been created with respect to the real estate and personal property. Thus, as of April 19, 1991, the state court decreed that equitable title to the real estate and the Lincoln and Chrysler automobiles belonged to Palmer.[2] Had the September transfers not taken place, the bankruptcy estate's interest in the real estate and personal property would have been subject to the state court decree, and that decree would have been honored by this court, unless its terms violated bankruptcy law (as discussed below); as a result the trustee would have been compelled to return the real estate and two automobiles to the true owner of the property—Palmer[3].

The dual purposes of the preference provisions of § 547 are "to discourage creditors from racing to the courthouse to dismember the debtor during its slide into bankruptcy and to further the prime bankruptcy policy of equality of distribution

---

facturer, importer, dealer, or any other person, shall acquire any right, title, claim, or interest in or to the motor vehicle until such person has had issued to him a certificate of title to the motor vehicle, or delivered to him a manufacturer's or importer's certificate for it; and no waiver or estoppel operates in favor of such person against a person having possession of the certificate of title to, or manufacturer's or importer's certificate for, the motor vehicle, for a valuable consideration.

(B) Subject to division (C) of this section, no court shall recognize the right, title, claim, or interest of any person in or to any motor vehicle sold or disposed of, or mortgaged or encumbered, unless evidenced:

(1) By a certificate of title, a manufacturer's or importer's certificate, or a certified receipt of title cancellation to an exported motor vehicle issued in accordance with sections 4505.01 to 4505.19 of the Revised Code;

(2) By admission in the pleadings or stipulation of the parties;

(3) In an action by a secured party to enforce a security interest perfected under sections 1309.01 to 1309.50 of the Revised Code in accordance with division (A) of section 4505.13 of the Revised Code, by an instrument showing a valid security interest.

Ohio Rev.Code § 4505.04.

2. Defendant Palmer asserts that the state court order also found the 1934 Ford of Kenneth Winkle to be part of a constructive trust. The court does not agree with the defendant's interpretation of that order. While the state court found that a constructive trust had been created "in the real and personal property of [Mr. and Mrs. Winkle]," with no reference to the 1934 Ford, the order contains two provisions specifically referring to that automobile which directly contradict the defendant's interpretation of the order. The state court found that the embezzled funds benefitted both debtors with respect to the real estate they owned and "the motor vehicles they currently own, *with the exception* of the *1934 Ford in Kenneth Winkle's name.*" In accordance with such finding, the state court enjoined the Winkles from disposing or encumbering any of their real estate or "any of the motor vehicles (*except the 1934 Ford*)." Consistent with the principle that specific provisions of an order control more general provisions, this court interprets the state court order as excluding the 1934 Ford from its declaration and imposition of a constructive trust.

3. The trustee asserts that under § 544 his rights to property are greater than the debtors' rights, but offers no legal authority that he should prevail under his strong-arm powers under the fact pattern before this court.

As a general rule, it must be held that section 541(d) prevails over the trustee's strong-arm powers. Although those powers allow a trustee to assert rights that the debtor itself could not claim to property, Congress did not mean to authorize a bankruptcy estate to benefit from property that the debtor did not own. Where state law impresses property that a debtor holds with a constructive trust in favor of another, and the trust attaches prior to the petition date, the trust beneficiary normally may recover its equitable interest in the property through bankruptcy court proceedings. *Vineyard v. McKenzie (Matter of Holstein Leasing)*, 752 F.2d 1009, 1013–1014 (5th Cir.1985).

among similarly situated creditors." *Danning v. Bozek (In re Bullion Reserve of North America)*, 836 F.2d 1214, 1217 (9th Cir.1988). Because of this policy and the supremacy of bankruptcy law over conflicting state priority laws, when a state law subjects funds to a constructive trust, the bankruptcy estate is not automatically deprived of those funds. *Torres v. Eastlick (In re North American Coin & Currency, Ltd.)*, 767 F.2d 1573, 1575 (9th Cir.1985). An automatic exemption from the bankruptcy estate of any funds that a state deems to be held in constructive trust would permit the states to circumvent or manipulate the distribution rules and priorities of the Bankruptcy Code. For this reason, courts have held that where constructive trusts are applied in bankruptcy proceedings, the beneficiaries of that trust must be able to trace their funds to identifiable trust assets, and not merely to general funds of a debtor. *See, e.g., State of Wisconsin v. Reese (Matter of Kennedy & Cohen, Inc.)*, 612 F.2d 963 (5th Cir.1980); *Selby v. Ford Motor Co.*, 590 F.2d 642 (6th Cir.1979); *In re Auto-Train Corp.*, 53 B.R. 990 (D.D.C.1985).

In short, state law must be applied in a manner consistent with federal bankruptcy law; here, the state court decree imposing a constructive trust on specific assets of the debtors does not conflict with bankruptcy law or policy. In fact, the decree's imposition of a constructive trust upon certain assets held by the debtors comports with bankruptcy philosophy:

> The Bankruptcy Act simply does not authorize a trustee to distribute other people's property among a bankrupt's creditors. *Pearlman v. Reliance Insurance Co.*, 371 U.S. 132, 135–136, 83 S.Ct. 232, 234 [9 L.Ed.2d 190] (1962).

> Equality of distribution among creditors is a central policy of the Bankruptcy Code. According to that policy, creditors of equal priority should receive pro rata shares of the debtor's property. See, *e.g.*, 11 U.S.C. § 726(b) (1982 ed.); H.R. Rep. No. 95–585, *supra*, at 177–178. Section 547(b) furthers this policy by permitting a trustee in bankruptcy to avoid certain preferential payments made be-

fore the debtor files for bankruptcy. This mechanism prevents the debtor from favoring one creditor over others by transferring property shortly before filing for bankruptcy. Of course, if the debtor transfers property that would not have been available for distribution to his creditors in a bankruptcy proceeding, the policy behind the avoidance power is not implicated. The reach of § 547(b)'s avoidance power is therefore limited to transfers of "property of the debtor."

> . . . .

> *... Because the debtor does not own an equitable interest in property he holds in trust for another, that interest is not "property of the estate." Nor is such an equitable interest "property of the debtor" for purposes of § 547(b).* Begier v. I.R.S., — U.S. —, 110 S.Ct. 2258, 2262–2263 [110 L.Ed.2d 46] (1990) (emphasis supplied).

> \*   \*   \*   \*   \*   \*

■ The trustee also maintains that the transfers are avoidable as fraudulent transfers under § 548 which provides in relevant part that:

> (a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

> (1) . . . .

> (2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

> (B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

For the same reasons discussed above, it is clear that the disposition of the real estate and the Lincoln and Chrysler in April and September was not a transfer of the *debtor's property*. The state court merely found that the real estate and two of the motor vehicles were actually Palmer's property, and this court finds no con-

flict between that decision and either the Bankruptcy Code or bankruptcy policy.

\* \* \* \* \* \*

■ With respect to the 1934 motor vehicle, which was Mr. Winkle's property and not part of the constructive trust (see n. 2, *supra*), the court finds that the elements of § 547(b) have been satisfied, and the transfer of the automobile to Palmer may be avoided by the trustee in bankruptcy as a preferential transfer. Palmer contends that there was no antecedent debt owed to it:

> [T]he only proof the trustee offers is his argument that [the state judge's] decision was "an implicit finding" of a preexisting debt. That simply is not proof. The testimony of the party allegedly owing the debt on a prior basis is clearly contrary to that proposition. Mr. Winkle adamantly denied any knowledge of his wife's activities and there was no other evidence or proof of any nature, which would have linked him to her debt at that point. ("Post Trial Brief" of Palmer at p. 10)

Palmer's argument ignores the broad meaning accorded to "debt" under the Bankruptcy Code. " 'Debt' means liability on a claim," 11 U.S.C. § 101(11), and "claim," in turn, means:

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
>
> (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured; 11 U.S.C. § 101(4).

In its amended complaint filed in state court, Palmer alleged that:

> 22. Defendant, Kenneth M. Winkle, owes Plaintiff an undetermined amount of money to compensate Plaintiff for said money paid to Kenneth L. Winkle, or

converted to his use, or used to discharge his obligations.

> . . . .
>
> 24. Defendant, Kenneth L. Winkle, has, between the period of June 1, 1985 and March 10, 1989, received, retained, or disposed of an undetermined amount of property of Plaintiff's, knowing or having reasonable cause to believe that the property was obtained through the commission of a theft offense.

In addition, Palmer requested the following relief from the state court:

> 2. That Plaintiff be awarded judgment against Kenneth L. Winkle, in an amount yet to be determined, plus interest for the money obtained by Defendant, Kenneth L. Winkle, or converted to his use, or paid to discharge his obligation, as alleged in Counts V and VI of the complaint.
>
> . . . .
>
> 10. For punitive damages, costs of this action and attorney fees, and for such other and further relief as is just and proper.

These allegations and requests for relief go beyond those necessary for the imposition of a constructive trust for the benefit of Palmer; they assert a right to payment against Kenneth Winkle and as such constitute a "claim" against him. The fact that such antecedent debt was not reduced to judgment prior to the transfer of the 1934 automobile is, of course, irrelevant. It is sufficient that the claim was contingent or disputed. 11 U.S.C. § 101(4).

Palmer also maintains that the element of insolvency has not been proven:

> [T]he Trustee has the benefit of the presumption provided by Section 547(f). Under this presumption, each of the debtors are presumed insolvent for the ninety (90) day period preceding the filing of bankruptcy. . . . [I]t is submitted that the presumption will not stand for Kenneth Winkle. Mr. Winkle clearly indicated that he did not know what the balances were on the various accounts ninety (90) days before the filing of bankruptcy and conceded they could be considerably lower. More importantly, he

testified that he was making his payments and was able to do so ninety (90) days before the bankruptcy was filed. It is respectfully submitted that the burden shifts at this point to the trustee to prove otherwise. ("Post Trial Brief" of Palmer at p. 7–8.)

As noted by Palmer, for purposes of § 547, "the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition." 11 U.S.C. § 547(f). "The presumption requires the party against whom the presumption exists to come forward with some evidence to rebut the presumption, but the burden of proof remains on the party in whose favor the presumption exists." H.R.Rep. No. 595, 95th Cong., 1st Sess. 375 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 89 (1978), U.S. Code Cong. & Admin.News 1978, pp. 5787, 5875, 6331.

■■■ All that was introduced by Palmer to rebut the presumption of insolvency was Kenneth Winkle's testimony upon cross-examination that his wife handled the bills so that he did not know the balances of various accounts in April of 1989 and that he was unable on the day of the hearing to identify which portion of the debts listed in the debtors' bankruptcy schedules belonged to him, to his wife, or to both. Mr. Winkle also agreed with the speculation of Palmer's counsel that Mrs. Winkle *may* have made substantial payments after April 1989. Upon re-direct examination, Mr. Winkle agreed with the trustee that he certainly owed some of the debts that existed in September of 1989 and that they could not all have belonged solely to Mrs. Winkle.

The testimony of Mr. Winkle clearly demonstrates that he did not keep informed of his financial obligations, but it furnishes no positive evidence to rebut the presumption that he was insolvent in September of 1989. The debtors have listed $71,067 of unse-cured debt and there was no evidence that the vast majority of that debt was incurred after the transfer of Mr. Winkle's automobile in September 1989. Palmer demonstrated that Kenneth Winkle did not know the extent of his debt in September 1989, but that is not the required showing. Palmer was required to come forward with some *evidence* of solvency to rebut the presumption of insolvency; merely showing that a particular witness doesn't know the extent of his insolvency does not satisfy Palmer's initial burden, i.e. "A speculative showing ... is insufficient." *Akers v. Koubourlis (In re Koubourlis)*, 869 F.2d 1319, 1322 (9th Cir.1989).

■■■ In addition, whether Mr. Winkle could still make payments on his debts in September is irrelevant. The definition of "insolvency" of an individual for purposes of § 547 is that a person's debts are greater than his assets, and not whether he is capable of making installment payments on those debts. *See* 11 U.S.C. § 101(31). Therefore, unless Mr. Winkle's total debts were less than the value of his only asset, a 1934 motor vehicle (valued at $14,200), at that time he transferred that asset to Palmer, he was insolvent.[4] As found above, however, Palmer has come forward with no evidence to rebut the presumption that Mr. Winkle's debts were less than the value of his assets on the date of the transfer.

■■■ Finally, Palmer maintains that even if all the elements of § 547 are satisfied, the transfer of the 1934 motor vehicle falls within the contemporaneous exchange exception of § 547(c), because Mr. Winkle transferred the 1934 vehicle "in order to obtain his dismissal in the lawsuit pending against him" ("Post Trial Brief" of Palmer at p. 10). Section 547(c) provides that:

(c) The trustee may not avoid under this section a transfer—

(1) to the extent that such transfer was—

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporane-

---

4. At the time the 1934 automobile was transferred in September, the only significant asset actually owned by Kenneth Winkle was this motor vehicle. Neither Mr. Winkle's one-half interest in the real estate nor the other two motor ve-hicles was an asset of Mr. Winkle for purposes of the insolvency test. As ruled earlier, those assets belonged to Palmer and were held in constructive trust by the debtors for Palmer.

ous exchange for new value given to the debtor; and

(B) in fact a substantially contemporaneous exchange;

The critical determination here is whether Palmer extended any "new value" in exchange for the transfer of the automobile to it. For purposes of preferential transfers, "new value" means:

money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation. 11 U.S.C. § 547(a)(2).

As part of its § 547(c)(1) affirmative defense, Palmer must prove with specificity the new value given to the debtor. *Jet Florida, Inc. v. American Airlines, Inc. (In re Jet Florida Systems, Inc.)*, 861 F.2d 1555, 1559 (11th Cir.1988). Here, all that Mr. Winkle received in return for the transfer of the 1934 automobile was a release from antecedent liability. Such a release is nothing more nor less than what any debtor receives when he pays his creditor. It is merely the satisfaction of an antecedent debt and is precisely what § 547(b) militates against within the 90–day period prior to bankruptcy. Further, it makes no difference that the debt was satisfied in the context of litigation rather than as a result of a pre-litigation demand for payment.

If a release ... resulting from settling a claim was new value bringing the settlement payment within the contemporaneous exchange exception, creditors would rush to settle for cash at the first hint of the debtor's financial trouble rather than wait and pursue a claim in bankruptcy. Those creditors who successfully settle will likely receive more than they otherwise would have, leaving less for the creditors who do not successfully settle. This would be inconsistent with Congress' intent to deter creditors from dismembering the debtor during his slide into bankruptcy and to promote equity among creditors.

....

All the payment for the settlement and release does is deplete the debtor's estate

at the other creditors' expense, frustrating Congress' intent to promote fair distribution among creditors. *Energy Cooperative, Inc. v. SOCAP International, Ltd. (In re Energy Cooperative, Inc.)*, 832 F.2d 997, 1003–1004 (7th Cir.1987).

Because the settlement and dismissal of Palmer's suit against Mr. Winkler did not constitute "new value," the contemporaneous exchange exception of § 547(c)(1) is not applicable to the transfer of the 1934 motor vehicle.

For the foregoing reasons, judgment will be entered in favor of the plaintiff-trustee with respect to the transfer of the 1934 automobile. All other relief requested by the Plaintiff will be denied and judgment will be awarded to the defendant with respect to such counts.