**In re Richard A. DAMIANI, and Rosemarie Amato, Debtor.**

**AMERICAN SECURITY INSURANCE SERVICE, INC., Plaintiff,**

v.

**Richard A. DAMIANI, Defendant.**

**Bankruptcy No. B92–13688(B). Adv. No. B92–1500.**

United States Bankruptcy Court, N.D. Ohio, E.D.

July 28, 1993.

Joel I. Newman, Paula J. Goodrich, Newman & Newman, Cleveland, OH, for plaintiff.

Richard A. Damiani, pro se.

## MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

This matter is before the Court on American Security Insurance Service, Inc.'s (ASIS) complaint for declaratory judgment as to dischargeability and for relief from stay to proceed in state court. ASIS is seeking to collect insurance premiums the

Debtors owe to it. Following a trial thereon, the following findings of fact and conclusions of law are hereby reached:

The facts are generally not in dispute. On or about July 12, 1991, the Defendant–Debtor, Richard A. Damiani (Debtor), issued a check drawn on the account of Richard A. Damiani and Associates Co., L.P.A. in the amount of $2,000.00. The check was issued to ASIS which provided insurance coverage for a former business entity operated by the Debtor known as Western Reserve Art & Design Studio. Said check was issued by the Debtor in partial payment of an outstanding ASIS account balance in the amount of $3,555.34. Upon presentment to the drawee bank, the check was dishonored on two separate occasions. Notice of the dishonor was duly given to the Debtor, but the debt was never paid. Consequently, ASIS commenced a civil lawsuit against the Debtor in state court on July 2, 1992, on allegations of fraud and misrepresentations respecting the dishonored check, upon the belief that (1) the Debtor knew there were insufficient funds on account at the time of check issuance and (2) the Debtor had no intention of covering the check once he received notice of the dishonor. Subsequently, the Debtor sought relief by filing his voluntary petition under Chapter 7 of the Code. This adversary proceeding ensued.

The dispositive issue is whether the subject dishonored check issued by the Debtor is a dischargeable debt.

Damiani is an attorney who is and has been a sole practitioner.[1] (Damiani, Direct). His wife, Rosemarie Amato, owned a design studio by the name of Western Reserve Art & Design Studio (Western Reserve). (Id.). ASIS is an insurance broker. (Schwing, Direct). Schwing is president of ASIS and is the Company representative who interacted with Damiani at all relevant times herein. (Id.).

ASIS obtained insurance for Damiani's home, office, automobile and for Western Reserve. (Damiani Direct). Plaintiff ob-

tained automobile insurance for Damiani through Progressive Insurance Company (Progressive). (Schwing, Cross). Schwing also had lunch with Damiani on occasion and was told that Damiani's finances were "tight". (Id.). Schwing believed that the "tight" financial condition that Damiani spoke of was only due to the timing of receiving fees due. (Id.). Damiani always represented that he had money coming in. (Id.). But for the instant litigation, Damiani had never issued a bad check to ASIS. (Id.).

In mid–1991, ASIS commenced collection procedures against Western Reserve for $3,555.34 due on insurance premiums. (Schwing, Direct). ASIS had paid the insurance premium to the insurance company underwriting the policy and thus the premium money was due and owing directly to ASIS. (Damiani, Direct). The policies at issue ran on an annual basis and were due to expire in November of 1991. (Id.). Damiani issued a $2,000.00 check to Plaintiff to stop collection procedures initiated by Plaintiff. (Schwing, Direct). At the time Damiani issued the check, he told Schwing to hold the check for a few days. (Id.). The check was issued on July 12, 1991. (Id., Ex. A). ASIS caused the check to be deposited on either July 13, 14 or 15, 1991. (Id.). The check was denied payment by the bank on July 16, 1991 and returned to ASIS marked "NSF". (Id.). Schwing then called Damiani who told him to re-deposit the check. (Schwing, Direct). ASIS re-deposited the check on July 17 or 18, 1991. (Id.). The bank denied payment on the check on July 22, 1991 and again returned the check to ASIS marked "NSF". (Schwing, Direct). ASIS then turned the matter over to its attorneys for collection. (Id.).

◼ Under § 523(a)(2) of the Code, a discharge under § 727 does not discharge a debt:

---

1. Damiani represented himself *pro se* in this adversary proceeding. His direct testimony was presented in a narrative form.

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive; or

The Ohio Revised Code § 1303.49 (U.C.C. 3–413) provides, in part:

Contract of maker, drawer, and acceptor.

(A) The maker or acceptor engages that he will pay the instrument according to its tenor at the time of his engagement....

The Ohio Revised Code § 1303.03 provides, in part:

Form of negotiable instruments; draft, check, certificate of deposit, note defined.

(A) To be a negotiable instrument within sections 1303.01 to 1303.78 of the Revised Code, a writing shall comply with all of the following:

(1) It must be signed by the maker or drawer.

(2) It must contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation, or power given by the maker or drawer except as authorized by sections 1303.01 to 1303.78 of the Revised Code. (2) A "check" if it is a draft drawn on a bank and payable on demand....

(3) It must be payable on demand or at a definite time.

(B) A writing that complies with the requirement of this section is one of the following:

■ To except a debt from discharge under § 523(a)(2)(A) a creditor must prove (1) that the Debtor obtained money, property, services, or an extension, renewal, or refinancing of credit, (2) through a material misrepresentation, 3) that the debtor knew said misrepresentation was false or that the misrepresentation was made with gross recklessness as to its truth, (4) that the debtor intended to deceive the creditor, (5) that the creditor reasonably relied on the false representation, and (6) that its reliance was the proximate cause of loss. *In re Ward*, 857 F.2d 1082, 1083 (6th Cir.1988) (citations omitted). The burden of proof as to each of these elements is on the creditor. *Id.*

Here, the parties stipulated to the issuance of the bad check and further stipulated that Damiani's fraudulent intent was the only issue in contention between the parties. Damiani's case presentation, however, made it clear that his defense was also based upon the additional issue of reasonable reliance. Thus, the Court will thoroughly analyze these two elements of the case.

■ Applicable nonbankruptcy law is clear; a check is an unconditional promise to pay a sum certain on demand. O.R.C. §§ 1303.49(A) and 1303.03. Thus, Damiani's issuance of the $2,000.00 check constituted a promise to pay $2,000.00 to Plaintiff on demand. Although Damiani attempted to condition this promise by requesting that Schwing not deposit the check for a few days, said condition was satisfied. A separate unconditional promise to pay on the check was made when Damiani directed Schwing to re-deposit the check after it had been returned NSF.

■ Clearly, Damiani knew the status of his financial condition at the time the check was issued and at the time he directed Schwing to re-deposit the check. Damiani knew or should have known that he did not have the funds to pay the check. Indeed, Damiani admitted this knowledge when he testified that he had funds coming in to cover the check but that the funds failed to materialize. Damiani's use of this argument to obtain dischargeability is not com-

pelling. Damiani never told Schwing that he did not presently have funds to cover the check. Thus, his issuance of the check, and all the circumstances surrounding said issuance, arise to gross recklessness, if not an outright misrepresentation of a material fact, relating to obtaining services and/or an extension of credit. Additionally, the Court also finds that the foregoing circumstances support a finding of intent to deceive.

The evidence was uncontradicted and, indeed, stipulated, that (1) Damiani owed $3,555.43 to ASIS; (2) that the $2,000.00 was payment on that debt; (3) and that the $2,000.00 payment was made to stop and did stop collection procedures. Damiani argued that ASIS' reliance on the check as payment was unreasonable. ASIS, having never received a bad check from Damiani, had no reason to believe this check would not be good. Indeed, Damiani never told him otherwise. Thus, ASIS' reliance on the check as a basis to stop collection procedures and to continue insurance coverage was reasonable.

Finally, in a civil action, the issuance of a check returned for insufficient funds is sufficient to constitute a *prima facie* case of fraud. *Place v. Elliott,* 147 Ohio St. 499, 72 N.E.2d 103 (1947). Thus, the stipulations of fact satisfy Plaintiff's burden of proof in this action, and it is incumbent upon Damiani to rebut Plaintiff's case. Damiani's testimony and argument failed to sufficiently rebut ASIS' case. Indeed, Damiani's conclusory statements that funds were coming in but failed to materialize, do not carry much weight absent documentary evidence to support such contentions.

Accordingly, judgment is rendered in favor of ASIS. The $2,000.00 debt arising from issuance of the July 12, 1991 check is a nondischargeable obligation, and ASIS is granted relief from stay to pursue this matter further in state court.

IT IS SO ORDERED.