In re Terry Lee COATNEY, Kathleen Ann Coatney, Debtors.

TUSCO GROCERS, INC., Plaintiff,

v.

Terry Lee COATNEY, et al., Defendants.

Bankruptcy No. 94–50847.
Adv. No. 94–5106.

United States Bankruptcy Court,
N.D. Ohio,
Eastern Division.

Aug. 21, 1995.

Jerry Roubenes, Akron, OH, for defendants-debtors.

Gary Corroto, Tzangas, Plakas & Mannos, Canton, OH, for plaintiff-creditor.

### MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

MARILYN SHEA-STONUM, Bankruptcy Judge.

This matter is before the Court on a motion for summary judgment filed by Defendant–Debtors, Terry Lee and Kathleen Ann Coatney. This proceeding arises in a case referred to this Court by the Standing Order of Reference entered in this District on July 16, 1984. It is determined to be a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) over which this Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b).

The Complaint in this matter alleges that the debt owing from Defendant–Debtors to Plaintiff–Creditor, Tusco Grocers, Inc., was procured by fraud, which is evidenced by dishonored checks, and is thus nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). Defendant–Debtors contend that no fraud existed, that the returned checks cannot, as a matter of law, evidence a false representation, and that the debt at issue is dischargeable in their chapter 7 proceeding. Based upon these contentions, Defendant–Debtors moved for summary judgment asserting that there are no genuine issues as to the material facts in this case.

### BACKGROUND

Defendant–Debtor, Terry Coatney, was a principal shareholder and officer in an Ohio corporation, C.Y. & F., Inc. ("CYF"), which operated grocery stores. Plaintiff–Creditor, Tusco Grocers, Inc. ("TUSCO"), is a wholesale supplier of grocery and related items and CYF was one of Plaintiff–Creditor's accounts. In early 1992, two of the three stores operated by CYF were closed due to increased competition. Thereafter, CYF and TUSCO entered into a new financing agreement for the purchase of grocery items for CYF's remaining store. The agreement provided that the pre-existing debt for CYF's two closed stores would be consolidated with the third store. A $300,000.00 promissory note in CYF's corporate name, with Defendant–Debtors as personal guarantors, was executed to secure the new agreement. A new line of credit was then established for the remaining store.

During the period between November, 1992, and February, 1993,[1] and as payment for the credit extended, Mr. Coatney cut a series of checks, drawn on the corporate account, and made payable to Plaintiff–Creditor. Those checks were not, however, negotiated as either payment on them was stopped or they were returned for insufficient funds. On May 27, 1994, Defendant–Debtors, Terry Lee and Kathleen Ann Coatney, filed a joint and voluntary chapter 7 bankruptcy petition. Listed on Schedule D of their petition was the debt owing to TUSCO for $315,000.00 which was secured by collateral valued at $100,000.00.

On September 12, 1994, TUSCO filed a Complaint objecting to Defendant–Debtors' attempt to discharge a portion of the $315,000.00 debt which it was owed. That Complaint was premised upon 11 U.S.C. § 523(a)(2)(A) and alleged that Defendant–Debtors obtained some of the listed debt through false representations and actual fraud. As a basis for its allegations, Plaintiff–Creditor's Complaint stated the following:

> By tendering . . . checks to Plaintiff, Defendants were representing to Plaintiff that they had the ability and intention to pay the debt owed to Plaintiff. Based upon these representations, Plaintiff extended additional credit to Defendants under the line of [already existing] credit. However, Defendants maliciously passed worthless checks to the Plaintiff with the intent to defraud Plaintiff. As a result of the fraud of the Defendants, Plaintiff has tendered Two Hundred Ninety-nine Thousand Six Hundred Seventy-nine and 99/100

---

1. Given the Court's decision on the legal issues, it is not necessary to address the lengthy period of time over which the checks were issued and then subsequently returned for insufficient funds.

Dollars ($299,679.99) to Defendants for which it has not been repaid.

Defendant–Debtors contend in their motion for summary judgment, that, as a matter of law a check cannot effectuate a representation, and thus cannot be used as the basis for a cause of action under 11 U.S.C. § 523(a)(2)(A).

## ISSUE

Whether a check, that is later stopped before payment or returned for insufficient funds, can constitute a misrepresentation by the issuer[2] of the check that may act to preclude the discharge of that debt from bankruptcy pursuant to 11 U.S.C. § 523(a)(2)(A).

## DISCUSSION

Section 523(a)(2)(A) of the Bankruptcy Code provides that debtors may not discharge any debts "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by . . . false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A). To except a debt from discharge under this provision, a creditor must prove: (1) that the debtor obtained money through a material misrepresentation that at the time the debtor knew was false or made with gross recklessness as to its truth; (2) that the debtor intended to deceive the creditor; (3) that the creditor reasonably relied on the misrepresentation; and (4) that such reliance was the proximate cause of the creditor's loss. *In re Ward*, 857 F.2d 1082, 1083 (6th Cir.1988); *Coman v. Phillips (In re Phillips)*, 804 F.2d 930, 932 (6th Cir.1986). The threshold issue, therefore, in any 11 U.S.C. § 523(a)(2)(A) analysis is whether the debtor made a material misrepresentation.

In the case at bar, Plaintiff–Creditor alleges that when Defendant–Debtors tendered the checks they were representing that they had the ability and intention to pay the debt owed. Plaintiff–Creditor further contends that because Defendant–Debtors either knew or should have known that payment on those checks would be stopped or that they would be returned for insufficient funds, the presentation of the checks constituted a misrepresentation of a material fact. Defendant–Debtors contend that a check cannot, as a matter of law, constitute a representation. Based upon that contention, Defendant–Debtors have moved for summary judgment.

A court must grant a party's motion for summary judgment "if . . . there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A material fact is one that must be decided before there can be a resolution of the substantive issue that is the subject of the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Bachner v. State of Illinois (In re Bachner)*, 165 B.R. 875, 878 (Bankr.N.D.Ill.1994). The party moving for summary judgment bears the initial burden of showing the court that there is an absence of a genuine dispute over any material fact, *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir.1994) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)), and, upon review, all facts and inferences must be viewed in the light most favorable to the nonmoving party. *Searcy v. City of Dayton*, 38 F.3d 282, 285 (6th Cir.1994); *Boyd v. Ford Motor Co.*, 948 F.2d 283, 285 (6th Cir.1991), *cert. denied*, 503 U.S. 939, 112 S.Ct. 1481, 117 L.Ed.2d 624 (1992).

For the purposes of deciding the summary judgment motion, it is undisputed that Defendant–Debtors caused checks to be issued to Plaintiff–Creditor as payment for credit extended. Further, it is undisputed that those checks were not negotiated and hence

---

**2.** It is undisputed that Debtor, Terry Coatney, signed the checks at issue in his corporate capacity as president of CYF. Plaintiff–Creditor contends that both Mr. and Mrs. Coatney are liable for this debt as guarantors who signed a promissory note to secure the line of credit extended to CYF. Defendant–Debtors contend that because the debt at issue is a corporate debt, that because

Mrs. Coatney was not a signatory on the checks that form the basis of this cause of action, and that because CYF is not a party to the within bankruptcy, that Plaintiff–Creditor's Complaint is misplaced. However, given this Court's decision on the legal issues presented in the summary judgment motion, it is unnecessary to discuss these contentions more fully.

payment on the debt was not made. Therefore, if the checks can be construed as a representation that Defendant–Debtors had the ability and intention to pay the debt then genuine issues of material fact exist as to whether that representation was false. If, however, the issuance of a check cannot, as a matter of law, constitute a representation, then Plaintiff–Creditor cannot meet the threshold requirement of its cause of action and summary judgment would be proper.

There exists a split of authority as to whether passing a bad check can be the basis for a cause of action pursuant to 11 U.S.C. § 523(a)(2)(A). Courts adopting one view hold that the issuance of a check carries with it an implied representation by the issuer that there exist sufficient funds to cover payment on the check. *See American Security Ins. Serv., Inc. v. Damiani (In re Damiani),* 157 B.R. 17 (Bankr.N.D.Ohio 1993); *Georgia Casualty and Surety Co. v. Miller (In re Miller),* 112 B.R. 937, 940 (Bankr.N.D.Ind. 1989); *In re Almarc Mfg., Inc.,* 62 B.R. 684, 689 (Bankr.N.D.Ill.1986); *In re Perkins,* 52 B.R. 355, 357 (Bankr.M.D.Fla.1985); *In re Mullin,* 51 B.R. 377, 378 (Bankr.S.D.Ind. 1985). Courts adopting the other view hold that a check is neither a statement nor a representation as to whether it will be honored upon presentment, and that no fraud will exist without some positive statement regarding the sufficiency of the debtor's bank balance. *See Goldberg Securities, Inc. v. Scarlata (In re Scarlata),* 979 F.2d 521 (7th Cir.1992); *Bobilya Chrysler, Plymouth, Dodge, Inc. v. Gross (In re Gross),* 175 B.R. 277 (Bankr.N.D.Ind.1994); *Roebuck Auto Sales, Inc. v. Mahinske (In re Mahinske),* 155 B.R. 547 (Bankr.N.D.Ala.1992); *Buckeye Candy Company v. Ritzer (In re Ritzer),* 105 B.R. 424 (Bankr.S.D.Ohio 1989); *Microtech Int'l, Inc. v. Horwitz (In re Horwitz),* 100 B.R. 395 (Bankr.N.D.Ill.1989).

Plaintiff–Creditor asserts that this Court must accept the first view as it is bound to apply Ohio substantive law to the facts of this case. Ohio law indicates that a check is an unconditional promise to pay a sum certain on demand, *see* O.R.C. §§ 1303.03, 1303.49; *American Security Ins. Service, Inc. v. Damiani (In re Damiani),* 157 B.R. 17 (Bankr.N.D.Ohio 1993), and, that in a civil action, the issuance of a check which is later returned for insufficient funds is sufficient evidence to constitute a prima facie case of fraud. *Place v. Elliott,* 147 Ohio St. 499, 34 O.O. 410, 72 N.E.2d 103 (1947). Plaintiff–Creditor's assertion is incorrect, however, as it ignores the fact that although a Bankruptcy Court may look to state substantive law as guidance in its decision, whether a debt is nondischargeable pursuant to § 523 is strictly a question of federal law. *Grogan v. Garner,* 498 U.S. 279, 284, 111 S.Ct. 654, 658, 112 L.Ed.2d 755 (1991); *Brown v. Felsen,* 442 U.S. 127, 136–139, 99 S.Ct. 2205, 2211–13, 60 L.Ed.2d 767 (1979); *In re Seibert,* 914 F.2d 102, 105 (7th Cir. 1990); *Bobilya Chrysler, Plymouth, Dodge, Inc. v. Gross (In re Gross),* 175 B.R. 277, 284 (Bankr.N.D.Ind.1994); *Spinnenweber v. Moran (In re Moran),* 152 B.R. 493, 495 (Bankr.S.D.Ohio 1993); *Armstrong v. Glendenning (In re Glendenning),* 107 B.R. 136, 138 (Bankr.N.D.Ohio 1989).

In determining the applicable federal law, this Court must first look to the Supreme Court's decision in *Williams v. United States,* 458 U.S. 279, 102 S.Ct. 3088, 73 L.Ed.2d 767 (1982). In that case the Supreme Court held that knowingly passing a bad check does not constitute a "false statement" within the meaning of the statute that makes it a crime to make a false statement to a federal banking institution. *Williams,* 458 U.S. at 284, 102 S.Ct. at 3091; 18 U.S.C. § 1014. In so deciding, the Supreme Court analyzed the nature of a check and stated that:

[The issuing of the check] did not involve the making of a "false statement," for a simple reason: technically speaking, a check is not a factual assertion at all and therefore cannot be characterized as "true" or "false." Petitioner's bank checks served only to direct the drawee banks to pay the face amounts to the bearer, while committing petitioner to make good the obligations if the banks dishonored the drafts. Each check did not, in terms, make any representation as to the state of petitioner's bank balance.

**550**

*Williams,* 458 U.S. at 284–85, 102 S.Ct. at 3091. While the Supreme Court's decision in *Williams* concerned a criminal statute, the Court's rationale in that case is equally applicable to civil bankruptcy litigation as the "rule of lenity," under which criminal statutes are narrowly construed, is similar to the rule in bankruptcy under which provisions regarding discharge must be strictly construed in favor of the debtor. *Microtech Int'l, Inc. v. Horwitz (In re Horwitz),* 100 B.R. 395, 398 (Bankr.N.D.Ill.1989).

A further indication that the Supreme Court's reasoning in *Williams* is applicable within the bankruptcy context is found in *Stewart v. East Tennessee Title Ins. Agency, Inc. (In re Union Security Mortgage Co.),* 25 F.3d 338 (6th Cir.1994). In that case, which dealt with the chapter 11 trustee's attempt to avoid an alleged preference, the Sixth Circuit reversed the District Court's finding that the debtor's delivery of a check, which was later returned for insufficient funds, was fraudulent. The District Court, relying upon Tennessee state law that premised a cause of action in fraud on a material misrepresentation, determined that the debtor's delivery of the dishonored check was clearly fraudulent as that delivery misrepresented to the creditor that the debtor had sufficient funds in its bank account to cover the amount of the check. *Union Security Mortgage,* 25 F.3d at 341. In reversing the District Court's decision, the Sixth Circuit looked to the federal law as articulated in *Williams* and stated that "since a check does not make any representation, it cannot make any *mis*representation." *Union Security Mortgage,* 25 F.3d at 341 (emphasis in original).

■ In Plaintiff–Creditor's response to the motion for summary judgment, it noted that when confronted about the checks after they were returned for insufficient funds or after payment was stopped, Defendant–Debtor, Terry Coatney, gave assurances that the checks would be made good. However, this factual allegation, even if true, would not change the outcome of this Court's analysis. Any positive statement regarding the nature of Defendant–Debtors' bank balance or their intent to pay the debt could only be actionable pursuant to § 523(a)(2)(A) if the state-

ments were made at the same time that the checks at issue were cut and transferred. *See Bobilya Chrysler, Plymouth, Dodge, Inc. v. Gross (In re Gross),* 175 B.R. 277, 285 (Bankr.N.D.Ind.1994). In that way a plaintiff's § 523(a)(2)(A) cause of action would be premised on an actual or implied representation that the check being transferred was backed by sufficient funds and not, as in the case at bar, solely on the transfer of a check which cannot, by law, be construed to make any representation at all.

## CONCLUSION

Based upon the foregoing, this Court finds that, as a matter of law, the Plaintiff–Creditor cannot succeed on its cause of action and that summary judgment in favor of Defendant–Debtors is proper. Defendant–Debtors' obligation arising from their transactions with Plaintiff–Creditor is dischargeable and judgment on the pleadings will be entered in favor of the Defendant–Debtors.

**IT IS SO ORDERED.**