### In re Denise GILMORE, Debtor.

### Bankruptcy No. 97–35110.

United States Bankruptcy Court,
S.D. Ohio,
Western Division.

Jan. 29, 1998.

Christopher M. Hawk, Dayton, OH, for Debtor.

Michael J. Barren, Porter, Wright, Morris & Arthur, Cincinnati, OH, for Creditor Cashland, Inc.

George W. Ledford, Englewood, OH, Chapter 13 Trustee.

## DECISION AND ORDER OVERRULING OBJECTIONS TO CONFIRMATION

WILLIAM A. CLARK, Chief Judge.

This court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the standing General Order of Reference entered in this district. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L).

This matter is before the court upon the Objections to Confirmation [Doc. # 8–1] of creditor Cashland, Inc. ("Cashland"). The court conducted a hearing on the objection on December 2, 1997 at 1:30 p.m. At the close of that hearing, the court took the matter under advisement.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

On August 7, 1997, the debtor Denise Gilmore ("Debtor") borrowed a "payday" loan for $300.00 from Cashland. A "payday" loan refers to Cashland's practice of making loans based on the borrower's wages. The payday loan was due in two weeks on August 21, 1997.

At the time the loan was made, the Debtor wrote two checks for $172.50 each to Cashland, both to be held by Cashland to satisfy the debt in the event that the Debtor would not otherwise repay the loan. The amount in excess of the original $300.00 represented the fee for the payday loan. The Debtor had the option of repaying the loan before August 21, 1997, or doing nothing and Cashland would present the checks for payment. Before the loan came due and acting on the advice of counsel, however, the Debtor stopped payment on the two checks.

On September 9, 1997, the Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code, 11 U.S.C. § 101, *et seq.* (1994). On October 28, 1997, Cashland filed its Objections to Confirmation, objecting to the Debtor's proposed plan of reorganization on the basis that the plan was not proposed in good faith and by means forbidden by law.

It is Cashland's allegation that the prepetition conduct of the Debtor in stopping payment on the two payroll advance checks prior to filing for bankruptcy constitutes a lack of good faith under § 1325 of the Bankruptcy Code. Pursuant to § 1325, Chapter 13 plans must be proposed in good faith and not by

any means forbidden by law. 11 U.S.C. § 1325(a)(3).

In making this objection, Cashland contends that by stopping payment on the checks in question, the Debtor has committed fraud under state law and the Plan should therefore not be confirmed. In addition, Cashland contends that these actions were part of a scheme to defraud creditors by taking the loans, including the loan in question, with the intent of subsequently filing for bankruptcy.

In support of its contentions, Cashland argued at the December 2, 1997 hearing that under. Ohio law, when a check is dishonored upon presentment this transaction carries with it a presumption of fraud. *See* Ohio Rev.Code § 2913.11 (Anderson 1996). Thus Cashland argues that the state-law presumption of fraud should govern the determination of good faith under § 1325(a)(3).

While it is true that under Ohio law, when a check is issued on an account containing insufficient funds, a rebuttable presumption of fraud does arise, *see* R.C. § 2913.11(B)(2), no such presumption arises in case of a stopped payment check. *See State v. Powers*, No. 92 CA 10, 1993 WL 278456, at *4 (Ohio Ct.App. July 27, 1993) (Harsh, J., concurring), appeal dismissed, 69 Ohio St.3d 1428, 631 N.E.2d 639 (Ohio Sup. Ct. May 4, 1994). Even if this were the case, state law can not dictate. a result different from federal law, *Gilbert v. Palmer Mfg. & Supply, Inc. (In re Winkle)*, 128 B.R. 529, 535 (Bankr.S.D.Ohio 1991) (Clark, J.), and the controlling federal law is that writing a check makes no "false statement" for the purposes of determining fraud. *Williams v. United States*, 458 U.S. 279, 284, 102 S.Ct. 3088, 3091, 73 L.Ed.2d 767 (1982); *Stewart v. East Tenn. Title Ins. Agency, Inc. (In re Union Sec. Mortgage Co.)*, 25 F.3d 338, 341 (6th Cir.1994).

Cashland relies upon a New York bankruptcy case to argue that despite these decisions, in bankruptcy passing bad checks amounts to bad faith sufficient to prevent confirmation under § 1325(a)(3). *See Wegmans Food Market, Inc. v. Smith (In re Smith)*, 207 B.R. 403, 404–405 (Bankr. W.D.N.Y.1997). In *Smith,* however, the

bankruptcy court based a finding of nondischargeability under § 523(a)(2)(A) not on a presumption arising from passing a bad check, but on the Debtor's writing bad checks on "nine separate occasions within a period of only six days." *Id.* at 405. *Smith* is therefore not inconsistent with the Supreme Court and Sixth Circuit decisions.

In accordance with these decisions, the bankruptcy courts in Ohio have held that a bad check does not indicate fraud and thus cannot become the basis for denying confirmation of a debtor's plan of reorganization. *Tusco Grocers, Inc. v. Coatney (In re Coatney )*, 185 B.R. 546, 548–50 (Bankr.N.D.Ohio 1995); *In re Little,* 116 B.R. 615, 618–20 (Bankr.S.D.Ohio 1990) (Cole, J.).

It is clear, therefore, that even if the Debtor's actions were covered by the state statute in question, the Debtor's actions would carry with them no presumption of fraud in the context of § 1325(a)(3). In either case, the court concludes that the Debtor's stopping of payment on the checks, in and of itself, is not sufficient evidence of a lack of good faith.

Even so, if the Debtor's actions were part of a scheme to defraud creditors, the question of good faith must still be addressed. *See, e.g., Smith,* 207 B.R. at 405. In the case at bar, no evidence was presented that such a scheme existed. While Cashland did present evidence of checks to other creditors which received the same treatment, the testimony at the December 2, 1997 hearing indicated that the Debtor only considered bankruptcy after having borrowed the funds in question. The testimony supported the conclusion that the Debtor was attempting to avoid bankruptcy at all costs. She testified as a bank employee, she had always considered bankruptcy the worst option.

This is borne out by the Debtor's other prepetition actions. After having taken the loan in question, the Debtor sought advice from a local consumer credit counseling service. Despite being advised to file for bankruptcy by the service and by a bankruptcy attorney she later consulted, the Debtor did not initially act on this advice. It was not until a friend of the Debtor, who was also an

attorney, advised the Debtor to seek her present bankruptcy counsel, that the Debtor took actual steps toward filing for bankruptcy It was on the advice of her present counsel that the Debtor stopped payment on the checks in question and subsequently filed for bankruptcy relief.

Thus the Debtor's prior actions, when considered in the broader context in which they occurred, were consistent with a person struggling to make ends meet. It is, therefore, the court's conclusion that the Debtor's prepetition conduct does not constitute a lack of good faith under § 1325(a)(3).

As a final matter, the court will address the effect of the Debtor's recent rise in income which came to light at the December 2, 1997 hearing. In that hearing, Cashland questioned whether, in light of the Debtor's new employment, the Debtor's Plan provided for too low of a payment to creditors. After having examined the Plan in question, the court cannot conclude that the Debtor's proposed payment is too low.

While the Debtor's Plan proposes only a 10 percent payment to unsecured creditors, the Debtor's expenditures appear to be at the bare minimum. There appear to be no discretionary items at all in the Debtor's budgeted expenditures. In order to achieve even the 10 percent payment, the Debtor proposes payment beyond the normal three-year limit. *See* 11 U.S.C. § 1322(d). Thus, without considering the Debtor's recent increase in wage of approximately 70 cents and hour, the Debtor's ability to make the presently proposed payments might be questioned under § 1325(a)(6). It is only in light of that increase that the requirements of § 1325(a)(6) are satisfied.

It is the court's conclusion that the proposed payments under the Debtor's Plan are not too low, and that the Debtor's recent increase in income does not constitute a valid objection to confirmation under § 1325.

## CONCLUSION

For the reasons stated above, it is the court's holding that Cashland's Objections to Confirmation [Doc. # 8–1] should be, and hereby are, OVERRULED.

IT IS SO ORDERED.